IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAYOR & CITY COUNCIL OF        *
BALTIMORE
                              *
            Plaintiff
                              *
            vs.                    CIVIL ACTION NO. MJG-08-3319
                              *
PRICELINE.COM INCORPORATED,
et al.                        *

            Defendants        *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: REMAINING SUMMARY JUDGMENT ISSUES

The Court has before it the remaining issues presented by
Plaintiff Mayor and City Council of Baltimore's Motion for
Partial Summary Judgment [Document 107], the "Non-OTC"
Defendants' Motion for Summary Judgment [Document 115] and
Defendants' Motion for Summary Judgment [Document 117].   The
Court has held a hearing and had the benefit of the arguments of
counsel.


I.   BACKGROUND

In this case, Plaintiff, the Mayor and City Council of
Baltimore (the "City"), seeks to enforce upon Defendants[1] the
transient occupancy tax (the "Occupancy Tax") imposed by each of

---

[1]     The remaining Defendants are Orbitz, LLC; Travelport
Americas, LLC; Cheaptickets, Inc.; Trip Network, Inc.
(collectively, the "Orbitz Defendants"); Travelocity.com, LP; and
Site59.com LLC (the "Travelocity Defendants").

two versions[2] of Article 28 of the Baltimore City Code ("the
Ordinance") to transactions conducted by online travel companies
("OTCs").

The parties agree that the following hypothetical presents a
representative scenario for purposes of the instant case:

> 1. A hotel in the City agrees that an OTC
> can allow a customer to use a hotel room
> in return for the OTC's paying the hotel
> a specified amount, assumed for
> hypothetical purposes to be $100.
>
> 2. A customer gets on the OTC website and
> pays the OTC a hypothetical total of
> $220 for the use of the room. The
> statement provided to the customer
> indicates that there was a payment for
> $200 for the room and $20 for "taxes and
> fees."
>
> 3. The OTC – either before or after actual
> room occupancy – pays the hotel $108, of
> which $8[3] is treated as Occupancy Tax
> and remitted to the City.

See Summ. J. Hr'g, May 18, 2011, 6:20-8:21.

In the Memorandum and Order Re: Motions for Summary Judgment
[Document 167], the Court resolved the "liability issues"
presented in:

> 1. The City's Motion for Partial Summary
> Judgment [Document 107],
>
> 2. The "Non-OTC" Defendants' Motion for
> Summary Judgment [Document 115], and

---

Site59.com LLC (the "Travelocity Defendants").
[2] The pre-2007 (former) and post-2007 (current) versions.
[3] Assuming an 8% Occupancy Tax Rate.

3.    Defendants' Motion for Summary Judgment
      [Document 117].

Consequently, the case is in the following procedural

posture:

A.    The City has been granted partial
      summary judgment establishing that the
      remaining defendants are liable for the
      Occupancy Tax under the current version
      of the Ordinance.

B.    The Defendants have been granted partial
      summary judgment establishing that:

      a.    No Defendant is liable for the
            Occupancy Tax under the prior
            version of the Ordinance.

      b.    No Defendant is liable for the
            City's common law claims.

C.    The non-OTC Defendants[4] are not liable
      for the Occupancy Tax under the current
      version of the Ordinance and, therefore,
      have no claims remaining pending against
      them.

There remains for resolution herein:

1.    The determination of the taxable base to
      use for imposing the Occupancy Tax, and

2.    Defendants' request for summary judgment
      on their affirmative defenses.


II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the

pleadings and supporting documents "show that there is no genuine

---

[4]    Orbitz, Inc., Travelport Inc., Travelocity.com, Inc., and
Sabre Holdings Corporation.

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

"A defendant relying on an affirmative defense may prevail on its summary judgment motion 'when it has produced credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" Kephart v. Cherokee County, 229 F.3d 1142 (4th Cir. 2000) (unpublished) (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999)). "After the defendant has produced such evidence, the burden shifts to the plaintiff to come forward with evidence showing there is a genuine issue of material fact." Id.

III.  DISCUSSION

A.   Taxable Base Issue

The parties have agreed on the taxable base issue.  See Defs.' Submission [Document 172]; Pl.'s Submission [Document 173]; Defs.' Resp. to Pl.'s Submission [Document 174].

The parties have agreed that, in terms of the foregoing representative scenario:

> The total tax due is computed upon the total amount paid to the OTC reduced by the amount of Occupancy Tax that had already been in regard to the room rental.

This is illustrated, in terms of the agreed scenario as follows:

1.   The tax base is $212.00, consisting of the $220.00 total paid the OTC less the $8.00 that was paid to the City,

2.   The total tax on the transaction is $16.96 (8% of $212.00),

3.   The tax due is $8.96 ($16.96 minus $8.00).

B.   Affirmative Defenses

Defendants present four affirmative defenses to their tax liability under the Ordinance.  They argue that the Ordinance violates the dormant aspect of the Commerce Clause, the Internet Tax Freedom Act, Defendants' due process and equal protection rights, and is an impermissible new sales tax that is prohibited by the Maryland Tax Code.

Defendants seek summary judgment establishing the validity of their affirmative defenses.  While there appear to be no genuine issues of material fact as to most of the affirmative defenses, the City has not filed a cross-motion for summary judgment.

## 1.   Commerce Clause

Defendants contend that the Baltimore Ordinance imposes a tax that is prohibited by the dormant aspect of the Commerce Clause, U.S. Const. Art. I, § 8, cl.3, which "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  Oregon Waste Sys., Inc. v. Dep't of Envt'l Quality, 511 U.S. 93, 98 (1994).

To be constitutionally valid, a state tax must (1) be "applied to an activity with a substantial nexus with the taxing State," (2) be "fairly apportioned," (3) "not discriminate against interstate commerce," and (4) be "fairly related to the services provided by the State."  Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977).  The party raising a Commerce Clause challenge carries the burden of persuasion.  See Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 164 (1983).

Defendants claim that the City's interpretation of the Ordinance violates all four prongs of the Complete Auto test.

Consistently with every court that has considered this issue in this context,[5] the Court disagrees.

As discussed herein, the Court holds that Defendants are not entitled to summary judgment with regard to their Commerce Clause affirmative defense.  The Court will address the prongs of the Complete Auto test in turn.

### a.   Substantial Nexus

The focus of the "substantial nexus" inquiry is on the activity being taxed.  Complete Auto, 430 U.S. at 279; see also Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 184 (1995) (holding that "'there is 'nexus' aplenty'" where state sought to impose tax on bus tickets sold in-state for service originating there) (quoting D.H. Holmes Co. v. McNamara, 486 U.S. 24, 33 (1988)); Allied-Signal, Inc. v. Dir., Div. of Taxation, 504 U.S. 768, 778 (1992) (in the context of state taxation of multistate income of a nondomicilary corporation, "there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax"); Tyler Pipe Indus., Inc. v. Washington State Dept. of Revenue, 483 U.S. 232, 251

---

[5]   See Vill. of Rosemont, Ill. v. Priceline.com Inc., 2011 WL 4913262 at *8 (N.D. Ill. Oct. 14, 2011); City of Charleston v. Hotels.com, 586 F. Supp. 2d 538, 544 (D.S.C. 2008); City of San Antonio v. Hotels.com, 2008 WL 2486043 at *14 (W.D. Tex. 2008); Travelscape, LLC v. S. Carolina Dept. of Revenue, 705 S.E.2d 28, 36 (S.C. 2011); Expedia, Inc. v. City of Columbus, 691 S.E.2d 122, 128 (Ga. 2009).

(1987) (holding that the activities of sales representatives in state "adequately supported the State's jurisdiction to impose its wholesale tax" on defendant).

The Supreme Court, in the context of sales and use taxes, has also preserved a physical presence requirement.  In Quill Corp. v. North Dakota By & Through Heitkamp, 504 U.S. 298 (1992), the Court harmonized National Bellas Hess, Inc. v. Department of Revenue of State of Illinois, 386 U.S. 753 (1967), which had held that a state had no power to impose a use tax on a mail order company with no physical presence in the taxing state, with the subsequent Complete Auto decision.  504 U.S. at 311.  The Court concluded that "[a] vendor whose only contacts with the taxing State are by mail or common carrier lacks the 'substantial nexus' required by the Commerce Clause."  Id.

Defendants "made the strategic decision not to contest whether they have sufficient presence in the City to constitute nexus over the taxpayer."  Defs.' Reply 22, n.29.  Instead, Defendants seek to transmogrify the "substantial nexus" requirement of Complete Auto to be a "transactional nexus" requirement.  See, e.g. Defs.' Mot. 44 ("The Supreme Court has broken the substantial nexus requirement into two components, both of which are required to pass constitutional muster: (1) nexus with the transaction and (2) nexus with the taxpayer.") (citing no authority).  Defendants then argue that there are

8

actually two distinct transactions when a customer makes a hotel booking through an OTC: first, there are "monies paid by consumers (via the OTCs) to hotels for the use of hotel rooms," and second, "monies paid by consumers to the OTCs for the provision of the OTC's travel facilitation services" for which taxes were not paid.[6]  Defs.' Mot. 47.

Accordingly, Defendants argue, the purported second transaction – the provision of online travel facilitation services for travel to the City of Baltimore - does not have a substantial nexus with the City of Baltimore.  According to Defendants, "[t]he City does not have the requisite connection to tax receipts earned by the OTCs for providing travel facilitation services from remote offices, call centers and computer servers to remote customers," because "[a]ll of these services are performed outside of Baltimore."

Even if the Court were to view what is, to the consumer, one transaction as two distinct transactions as asserted by

---

[6]    As already noted, when a customer obtains the use of a hotel room through an OTC, the billing statement provided to the customer would present two components: a room rental rate and an amount for "taxes and fees."

Furthermore, the OTCs contend that the "rental transaction" has two subparts: the wholesale room rate actually remitted to the hotel, and the taxes actually paid to the City on the wholesale room rate.  Similarly, according to Defendants the "facilitation transaction" has two subparts: the difference between the room charge presented to the customer and the wholesale room rate that the OTC pays the hotel, and the difference between the tax/service fee presented to the customer and the taxes remitted to the City.

Defendants, they cannot avoid the reality that even the travel facilitation transaction has a substantial nexus to the City of Baltimore.  Simply put, the travel facilitation by the OTCs is inextricably linked to the City of Baltimore because in every case, the OTC is facilitating travel for the taxpayer, the customer, to a hotel located in the City of Baltimore.

Judge Guzman, of the Northern District of Illinois, considered the "substantial nexus" requirement as it applied to a similar statute, and concluded:

> The Court holds that such a nexus is present here. First, the tax is levied for the privilege and use of renting a hotel room in Rosemont. The tax is paid by the rentor, who uses the room, regardless of where or how he made the reservation. Second, defendants enter into contracts with hotels in Rosemont for the right to market, facilitate and book reservations for their properties, and they profit from such reservations. The fact that the customer pays for the hotel room online, as opposed to in person at the hotel, is not of constitutional significance, given the nature of the in-state activity involved, i.e., the fact that the consumer stays in a hotel in Rosemont, the majority of the money for the hotel stay is remitted to Rosemont and the purpose of defendants' online transaction is to have the right to use property in Rosemont.

Vill. of Rosemont, Ill. v. Priceline.com Inc., 2011 WL 4913262, at *7 (N.D. Ill. Oct. 14, 2011); see also City of Charleston v. Hotels.com, 586 F. Supp. 2d 538, 544 (D.S.C. 2008) ("Here, there is both a substantial nexus and a physical presence between the taxing jurisdictions and Defendants, since Defendants are alleged

to have proactively marketed, booked, and leased hotel rooms and other accommodations which are physically located in Charleston and Mt. Pleasant."); City of San Antonio v. Hotels.com, 2008 WL 2486043 at *14 (W.D. Tex. 2008) (concluding that Defendants' substantial nexus argument is a "red herring"); Travelscape, LLC v. S. Carolina Dept. of Revenue, 705 S.E.2d 28, 37 (S.C. 2011) (substantial nexus satisfied where Defendants' employees made business visits to state, entered into contracts with state hotels, customer actually stays at hotel within the state, and "the services provided by the hotels are significantly associated with [the Defendant's] ability to establish and maintain a market in South Carolina for its sales").

Here, the activity being taxed by the Ordinance is the payment of money by transient guests for renting a hotel room, inclusive of charges for services necessary to complete the rental transaction. See Ordinance §§ 21-1(b), 21-2. The Ordinance is expressly imposed on the transient hotel guest, id. §§ 21-2, 21-4, who has a substantial nexus to the City because she travels to the City and occupies a room in the City. The tax, as written, is not imposed upon the OTC for providing services, although the OTCs have inserted themselves as a middleman into the transaction between hotel and guest. See Expedia, Inc. v. City of Columbus, 681 S.E.2d 122, 128 (2009) (dismissing Commerce Clause argument because, "but for the fact

11

that Expedia has willingly inserted itself as a matter of contract into the local taxation scheme designed for hotels and their guests, there would be no dispute").

For these reasons, the Court holds that Defendants are not entitled to summary judgment on their contention that the Ordinance is applied to an activity with a substantial nexus to the City.


b.    Fair Apportionment

Defendants argue that the Ordinance tax is not fairly apportioned because it taxes the value of hotel booking services not performed in Baltimore.

The purpose behind the apportionment requirement is "to ensure that each State taxes only its fair share of an interstate transaction." Goldberg v. Sweet, 488 U.S. 252, 260-61 (1989).  A tax is fairly apportioned if it is internally and externally consistent. Id. at 261.  "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." Id. "External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the

12

taxing State."   Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514

U.S. 175, 185 (1995).   "Here, the threat of real multiple

taxation (though not by literally identical statutes) may

indicate a State's impermissible overreaching."   Id.

The Ordinance is designed to reach the gross payment in a

retail transaction for the rental of a hotel room in Baltimore

City, "without any deduction for charges or other amounts for any

services necessary to complete the transaction."   Ordinance § 21-

1(b).   Defendants do not contend that the Ordinance is not

"internally consistent," because if every state imposed an

identical tax on the rental of hotel rooms in its jurisdiction,

no multiple taxation would result.   See Goldberg, 488 U.S. at

261.

Defendants do, however, argue that the Ordinance is not

externally consistent because the rental facilitation activity is

not fairly attributable to economic activity within the taxing

state, and risks multiple taxation.[7]   Defendants contend that the

service aspect of the hotel rental transaction is not fairly

---

[7]     Defendants note that Illinois, the home state of Orbitz, has
recently proposed a tax on the provision of "travel arrangement
reservation services," which, they contend, would be a double tax
on the same services that Baltimore is seeking to tax, as the
Ordinance does not provide a credit for taxes paid in other
jurisdictions.  See Mot. 54 & App. Ex. 49 (H.B. 1665, Floor Amend
no. 1, § 15, 96th Ill. Gen. Assem., (Jan. 6, 2011)).   The
proposed tax sought to amend the "Retailers' Occupation Tax Act"
to tax "sale at retail" including "travel arrangement reservation
services."   App. Ex. 49 at 133.

attributable to the City, because the call centers, computer
servers, and other OTC infrastructure are located elsewhere.

The Supreme Court of South Carolina, in Travelscape, LLC v.
South Carolina Department of Revenue, 705 S.E.2d 28 (S.C. 2011),
considered the same scenario and reasoned:

> The Supreme Court has consistently approved
> the taxation of sales without any division of
> the tax base among different states, finding
> such taxes properly measurable by the gross
> charge for the purchase regardless of any
> activity occurring outside the taxing
> jurisdiction that might have preceded the
> sale or might occur in the future.

Id. at 38 (citing Jefferson Lines, 514 U.S. at 185).  The Supreme
Court in Jefferson Lines noted that "[a] sale of goods is most
readily viewed as a discrete event facilitated by the laws and
amenities of the place of sale, and the transaction itself does
not readily reveal the extent to which completed or anticipated
interstate activity affects the value on which a buyer is taxed."
Jefferson Lines, 514 U.S. at 186.

So too with a hotel rental transaction.  The Court concludes
that the retail rental of a hotel room, whether facilitated
online using interstate or international computer servers or in
person at the hotel reception desk, is most sensibly viewed as a
discrete event facilitated by the laws and amenities of the place
of the hotel.  See id.  Similarly, the transaction itself does
not readily reveal the extent to which interstate activity
affects the value on which a buyer is taxed, because the OTCs'

14

services are freely available on the internet for casual browsing, and the share of the hotel rental transaction retained by the OTC for providing its services is not ascertainable by a customer who consummates a purchase.  See id.

The Court concludes that the amount that the Ordinance seeks to tax - the "total gross payments" received in a retail hotel reservation transaction, - is fairly attributable to the City of Baltimore.  The services provided by the OTCs are intrinsically linked to the rental of a hotel room in the City and are built into the retail price of the hotel room.[8]

---

[8]     This court is not persuaded by the reasoning of United States v. Edmonson County, Kentucky, 2001 WL 36199071, an unpublished decision by Magistrate Judge E. Robert Goebel, of the Western District of Kentucky, cited by Defendants.  In that case, the United States sought summary judgment to enjoin a locality from taxing a federal contractor, a Delaware corporation located in Maryland, which operated a nationwide computerized reservation system for the national parks and facilitated ticket sales to Mammoth Cave National Park, located in Edmonson County, Kentucky. Id. at *1.  Pursuant to the fee schedule in their contract, the National Park Service paid the contractor a flat rate of $2.60 for each campsite reservation and $1.90 for each cave tour ticket sold.  Id. at *2.  The ordinance there at issue levied a "'recreational license tax'" on ticket sales by "recreational businesses and businesses providing ticketing or reservation services for recreational businesses."  Id. at 3.

The Magistrate Judge in Edmonson County court concluded that, in addition to violating the Supremacy Clause, the tax also violated the dormant Commerce Clause, partly because "taxing every transaction, regardless of whether it is consummated in the County reaches far beyond that portion of value that is fairly attributable to economic activity within the County."  Id. at 9.

The Court does not agree with the reasoning of the Magistrate Judge in Edmonson County and, as discussed herein, concludes that the full gross payment for a hotel room, inclusive of any value attributable to rental facilitation, is fairly attributable to the City of Baltimore according to the rationale

c.   Discrimination Against Interstate Commerce

Defendants contend that attempts to extend the hotel room tax to the out-of-state OTCs while not similarly seeking to impose and recover hotel room tax from traditional travel agents and other service providers in Baltimore would unconstitutionally discriminate against interstate commerce.  See Complete Auto, 430 U.S. at 279.

Defendants present expert witness testimony stating that OTCs use the same business model of at least some traditional travel agents,[9] and that the City has, possibly, not subjected

---

of Jefferson Lines, 514 U.S. at 186.

[9]   Defendants attach the declaration of Dr. Chekitan Dev, a professor at the Cornell School of Hotel Administration, stating that:

> Online travel companies provide hotels and travelers many of the same services traditional brick-and-mortar travel agents and tour operators have provided for a very long time. . . . In fact, online travel companies use a business model – commonly referred to in the industry as the "prepaid" or "merchant" model – which has been in existence and used by offline travel agents and tour operators for decades and long before the advent of the Internet and online travel companies.  Using the prepaid or merchant model simply means that the traveler is charged at the time he or she makes a reservation and the travel intermediary (e.g., the online travel company) receives compensation for its services by adding its charges to the amount the hotel charges for the room rental. Online travel companies simply took this long-established business

16

traditional travel agents to the same scrutiny as OTCs with

respect to tax payments.[10]   The Court assumes that this evidence

is sufficient to avoid summary judgment for the City.   However,

Defendants would not be entitled to a directed verdict based on

discrimination against interstate commerce even if the proffered

testimony were uncontroverted at trial.   See also Columbus v.

---

model and combined it with modern electronic
technology to offer travelers a new, more
convenient way to book travel reservations.
Defs.' Ex. 9, Dev Decl. ¶¶ 15-16.

[10]     Defendants cite the deposition of Edward Gallagher, the
City's Director of Finance:
      Q.     My question really is, sir, that, are
      there other businesses, like travel agents,
      travel consolidators, travel wholesalers,
      tourist organizations, tour planners and the
      like, who utilize the very same business
      model as the on-line travel companies but who
      have never been subjected to the same
      scrutiny and lawsuit as the on-line travel
      companies?
      [Objection: deponent is not expert on
      business models of other travel
      intermediaries]
      A.     I - I don't know.   I don't know if - we
      have not pursued.   That's the only thing I
      can say about it.
      Q.     Do you know why?
      A.     No.
                        * * *
      Q.     But as far as you know, the City of
      Baltimore has never sought to collect taxes
      from other travel-related businesses
      performing the merchant model like it has the
      on-line travel companies –
      A.     That's correct.
      [Objection: Assumes facts not in evidence]

Defs.' Ex. 18, Gallagher Dep. at 88:8-19 (internal objection
omitted).

Expedia, Civil Action No. SU-06-CV-1893-8, slip op. at 44 (Ga. Super. Ct., Nov. 7, 2008) ("Columbus does not discriminate against Expedia. Rather, it seeks to have Expedia's collection of taxes be based upon the same 'charge to the public' as is done in every other transaction.").

Defendants are not entitled to partial summary judgment with regard to this prong of the Complete Auto inquiry.

### d.   Fair Relationship To The Services Provided By The State

Defendants claim that that the tax is disproportionately burdensome to the services that the OTCs enjoy from Baltimore City. See Complete Auto, 430 U.S. at 279. Defendants note that they do not benefit from "police and fire protection, the benefit of a trained work force, and the advantages of a civilized society" that Baltimore City might provide. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 624 (1981) (internal quotation marks omitted).

The Ordinance is levied on "the persons paying the rental or other charges for the use or occupancy" of hotel rooms, and the hotels and OTCs are merely the tax collectors. Ordinance § 21-4. The tax is directly related to the civil services provided by the City to the transient guest and thus any benefits the OTCs may or may not receive are immaterial with regard to this inquiry.

18

Therefore, the Ordinance survives this prong of the Complete Auto
test.

The Court has determined that Defendants are not entitled to
summary judgment on the basis that the Ordinance is applied to an
activity without a substantial nexus to Baltimore, is not "fairly
apportioned," discriminates against interstate commerce, and is
not fairly related to the services provided by Baltimore.
Accordingly Defendants are not entitled to summary judgment on
the ground that the Ordinance violates the dormant aspect of the
Commerce Clause.


        2.    Internet Tax Freedom Act

    Defendants contend that the Ordinance creates a
discriminatory tax that is prohibited by the Internet Tax Freedom
Act ("ITFA").

    The ITFA was enacted by Congress in 1998.  In part, it
prohibits "discriminatory taxes on electronic commerce."  Pub. L.
105-277, as amended, § 1101(a)(2) (codified at 47 U.S.C. § 151
note).  A tax on electronic commerce is a "discriminatory tax" if
it meets any one of the following conditions:

    (i)     is not generally imposed and legally collectible
            by such State or political subdivision on
            transactions involving similar property, goods,
            services, or information accomplished through
            other means;

    (ii)    is not generally imposed and legally collectible
            at the same rate by such State or such political

subdivision on transactions involving similar
property, goods, services or information
accomplished through other means . . .; [or]

(iii)   imposes an obligation to collect or pay the tax on
a different person or entity than in the case of
transactions involving similar property, goods,
services, or information accomplished through
other means . . . .

ITFA § 1105(2)(A).  Thus, the ITFA prohibits jurisdictions from
imposing greater tax burdens on electronic transactions than are
imposed upon traditional commerce.

Defendants argue that the Ordinance, as applied,[11] is not
imposed on traditional travel agents, and would tax OTCs at an
effectively higher tax rate than it would traditional travel
facilitation services.[12]  Plaintiffs respond that, to the
contrary, the Ordinance is aimed at ensuring that no entity
renting hotel rooms - traditional or online - is prejudicially
targeted.

Defendants have failed to produce credible evidence that
would entitle it to a directed verdict if not controverted at
trial establishing that the City is allowing traditional travel
agents operating under a similar business model to pay taxes on

---

[11]   As written, the Ordinance is "generally imposed" and does
not specifically discriminate against online commerce in favor of
traditional commerce.   See § 1105(2)(A)(i).
[12]   Defendants also argue that the Ordinance was enacted
specifically to target OTCs.  Whether or not the 2007 changes to
the Ordinance were motivated by changing technology and the
increasing prevalence of OTCs is legally immaterial under the
statutory language of the ITFA.  See ITFA § 1105(2)(A).

an amount less than the "gross amount" paid by guests.[13]   See

Kephart, 229 F.3d 1142.

Under the Ordinance, in all hotel rental transactions -

online or traditional - the tax is due at the same rate on the

gross amount paid by the consumer, inclusive of service charges.

See Vill. of Rosemont, Ill. v. Priceline.com Inc., 2011 WL

4913262, at *9 (N.D. Ill. Oct. 14, 2011) ("[D]efendants argue,

without any citation to the record, that the tax is

discriminatory because OTCs are charged a higher effective rate

due to their services being part of the 'room rental rate.'  This

argument also has no merit.  The tax is applied at the same rate

regardless of whether the transaction occurs online or offline

and is applied to the amount the rentor pays to occupy a room in

Rosemont.").

Defendants are not entitled to partial summary judgment

establishing that the Ordinance is a discriminatory tax that

violates the ITFA.

_____

[13]    Both parties criticize the other for failing to identify any
traditional travel facilitation entities either being taxed under
the Ordinance, or failing to be taxed under the Ordinance.
Compare Defs.' Reply 23 & n.31 ("The City failed to identify any
brick-and-mortar intermediaries using the merchant model that are
being taxed under the Ordinance") with City's Resp. 45 ("[T]he
City's Attorneys directly asked Defendants' corporate
representatives which other companies (besides Defendants) were,
in fact, using a merchant model and only paying taxes on
wholesale rates.  Their representatives could not positively name
any such offenders.").  However, Defendants bear the burden to
produce credible evidence that would entitle it to a directed
verdict if not controverted at trial.  Kephart, 229 F.3d 1142.

3.    Impermissible Sales Tax

Defendants argue that the current version of the Ordinance

violates the Maryland Retail Sales Act, which prohibits political

subdivisions from imposing new sales taxes.[14]   The City contends

that a hotel occupancy tax is distinct from a sales tax and that

the City's charter empowers it to impose the Ordinance.[15]

---

[14]    In relevant part:
  (a) Sales and use tax imposed. — Except as otherwise
 provided in this title, a tax is imposed on:
   (1) a retail sale in the State; and
   (2) a use, in the State, of tangible
   personal property or a taxable service.
  (c) Limitation on political subdivisions. —
   (1) A county, municipal corporation,
   special taxing district, or other
   political subdivision of the State may
   not impose any retail sales or use tax
   except:
    (i) a sales tax or use tax that was
    in effect on January 1, 1971;
    (ii) a tax on the sale or use of:
     1. fuels;
     2. utilities;
     3. space rentals; or
     4. any controlled dangerous
     substance,. . . ; or
    (iii) a tax imposed by a code
    county on the sale or use of food
    and beverages authorized under
    Article 25B, § 13H of the Code.
   (2) Paragraph (1) of this subsection may
   not be construed as conferring authority
   to impose a sales and use tax.
Md. Code Ann., Tax-Gen. § 11-102(a)&(c).

[15]    The State of Maryland has granted Baltimore City, subject
only to express statutory of limitations, "the power to tax to
the same extent as the State of Maryland has or could exercise
said power within the limits of Baltimore City as a part of its
general taxing power."   Baltimore City Charter, Article 2,
Section 40.

The Maryland Retail Sales Act imposes a tax on "retail sale[s]" and on the "use . . . of tangible personal property." Md. Code Ann., Tax-Gen. § 11-102(a). "Tangible personal property" includes the "right to occupy a room or lodgings as a transient guest." § 11-101(k)(1). The statute limits political subdivision from imposing retail sales or use taxes that were not in effect on January 1, 1971. § 11-101(c)(1)(i).

"The Maryland Retail Sales Act imposes a retail sales tax on the sale of personal property or a service and provides that the tax is paid by the buyer, collected by the vendor, and measured by the price of the commodity that the buyer purchases." T-Mobile Usa, Inc., 2006 WL 1976188 at *2 (Md. Tax Ct. June 29, 2006). "The tax has been held to be an excise on the privilege of selling specified personal property at retail, to be collected by the vendor although paid by that purchaser who is the ultimate consumer, so as to avoid a pyramiding of the tax on the intermediate purchaser or purchasers." Comptroller of Treasury v. Am. Cyanamid Co., 214 A.2d 596, 597 (Md. 1965).

The City first enacted a hotel occupancy tax in 1957. See Balt. Md. Ordinance 57-1096 (1957-58), Defs.' Ex. 1. Defendants argue that "[w]hile the tax on payments to actual hotel owners and operators was grandfathered in by § 11-102(c)(1)(i), the purported taxation of previously untaxed payments from a customer to Defendants is a new and therefore prohibited sales tax."

Since its inception, the City's hotel occupancy tax ordinance imposed a tax on "all gross amounts of money paid to the owners or operators of hotels in the City" of Baltimore. See Balt. Md. Ordinance 57-1096 (1957-58); Balt. City Code art. 28 § 77 (1966); Balt. City Code art. 28 § 21-2 (2006); Balt. City Code art. 28 § 21-2 (2007). Until 2007, neither the term "owners or operators of hotels" nor the term "gross amounts of money" were defined in the statute. This Court applied principles of statutory construction[16] to interpret those ambiguous terms in the Pre-2007 Ordinance and concluded that the OTCs were not owners or operators of hotels within the plain and ordinary meaning of those terms. [Document 167].

In 2007, the City legislature amended the hotel occupancy tax ordinance to include definitions for "owners or operators of hotels"[17] and "gross amounts of money,"[18] thereby resolving the statutory ambiguity. This Court concluded that the Defendants

---

[16]    Any ambiguity in a tax statute is resolved strictly against the taxing authority and in favor of the alleged taxpayer. See Supervisor of Assessments of Anne Arundel Cnty. v. Hartge Yacht Yard, Inc., 842 A.2d 732, 737-38 (Md. 2004).

[17]    "Owners or operators of hotels" includes persons "receiving any consideration for the rental of a hotel room for sleeping accommodations, including, without limitation, any broker, service provider, or other intermediary: (i) with which a hotel has contracted to arrange for the rental of a hotel room for sleeping accommodations." Ordinance § 21-1(d)(3)(i).

[18]    "Gross amounts of money" are defined as "[t]he total gross payments of any kind . . . received in a retail transaction for which real property is rented . . . without any deduction for charges or other amounts of any services necessary to complete the transaction." Ordinance § 21-1(b).

24

were "owners or operators of hotels" within the 2007 definition.
[Document 167].

The City's clarification of the definitions of "owners or
operators of hotels" and "gross amounts of money" does not
fundamentally change the nature of the hotel occupancy tax such
that it constitutes an impermissible new sales tax under the
Maryland Code.  See Md. Code Ann., Tax-Gen. § 11-102(c).
Maryland courts have consistently upheld taxes on bundled service
charges that are "functionally subordinate" and "inherently
necessary" in a sale price.  Dir. of Fin. for Mayor & City
Council of Baltimore v. Charles Towers P'ship, 657 A.2d 808, 817
(Md. Ct. Spec. App. 1995) (collecting cases), aff'd sub nom.
Chesapeake & Potomac Tel. Co. of Maryland v. Dir. of Fin. for
Mayor & City Council of Baltimore, 683 A.2d 512 (Md. 1996) ("[B]y
using the adjective 'gross' to modify the phrase 'sales price,'
the City Council evidenced an intent to tax the entire sales
price. . . . [C]onstruing the ordinance . . . so as to tax some,
but not all, of the components of the sales price would
effectively render the word 'gross' unnecessary, a result which
is not consonant with the rules of statutory construction.").

Because the City has not modified the essential language of
meaning of the Ordinance as a tax on "all gross amounts of money
paid" for the rental of a hotel room in Baltimore by a transient
guest, the Court concludes that Defendants are not entitled to

summary judgment on the ground that the Ordinance as amended in 2007 is an impermissible new sales tax.

### 4.   Violation of Due Process and Equal Protection

Defendants contend that the application of the Ordinance to them violates their due process and equal protection rights under both the United States and Maryland constitutions.  U.S. Const. amend. XIV, § 1; Md. Const., Declaration of Rights, art. 24. These arguments will be addressed in turn.

### a.   Due Process

Defendants contend that the 2007 Ordinance violates their due process rights because it is unconstitutionally vague. According to Defendants, the Ordinance fails to provide fair notice to the OTCs because the OTCs facilitate the renting of hotel rooms, whereas and the taxable activity is the payment of monies by transient guests for "renting, using, or occupying a room."

The Supreme Court discussed the concept of unconstitutional vagueness in violation of due process in <u>Hoffman Estates v. Flipside, Hoffman Estates</u>, 455 U.S. 489 (1982):

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of

action.  Indeed, the regulated enterprise may
have the ability to clarify the meaning of
the regulation by its own inquiry, or by
resort to an administrative process.

Id. at 498 (internal citations omitted).  There is a strong

presumption in favor of the constitutional validity of civil

ordinances.  See R.S. Constr. Co. v. Baltimore, 309 A.2d 629,

630-31 (Md. 1973).  "[T]he burden is upon the person attacking

its constitutionality, who must clearly show the

unconstitutionality of the statute."  Gino's of Maryland, Inc. v.

Baltimore, 244 A.2d 218, 227 (Md. 1968).

The current Ordinance defines "owners or operators of

hotels" as including includes persons "receiving any

consideration for the rental of a hotel room for sleeping

accommodations, including, without limitation, any broker,

service provider, or other intermediary: (i) with which a hotel

has contracted to arrange for the rental of a hotel room for

sleeping accommodations."  Ordinance § 21-1(d)(3)(i).  As this

Court has previously found, an OTC is an intermediary with which

a hotel has contracted to arrange for the hotel room rentals.

[See Document 167].

Moreover, the current Ordinance makes it clear that "gross

amounts of money" means "the total gross payments of any kind or

character," inclusive of "charges or other amounts for any

services necessary to complete the transaction."  Ordinance § 21-

1(b).  The portion of the customer's total gross payment that the

27

OTCs retained, without remitting taxes thereon, consisted of charges for "services necessary to complete the transaction." See id.

The plain language of the Ordinance clearly provides that the term "owners and operators of hotels" includes "any broker, service provider, or other intermediary," and that the total gross payment being taxed is inclusive of necessary service charges.  Therefore, the Court holds that Defendants are not entitled to summary judgment on the ground that the current Ordinance is unconstitutionally vague.  See also Vill. of Rosemont v. Priceline.com Inc., 2011 WL 4913262 at *9-10 (N.D. Ill. Oct. 14, 2011) (rejecting similar vagueness challenge).


b.    Equal Protection

Defendants contend that the Ordinance violates their equal protection rights because it classifies the Defendants as "owners or operators of hotels" but does not similarly classify traditional travel agents as "owners or operators of hotels." Defendants assert that both are intermediaries between hotels and hotel consumers, and that both earn fees for their facilitation services, but arbitrarily, only the OTCs' fees are subject to the tax.  Defendants also argue that the Amendment violates their equal protection rights as applied, because Plaintiffs have not tried to enforce it against any other travel intermediaries.

28

The Ordinance, as written, does not distinguish between OTCs and offline travel agents.   Defendants have presented insufficient evidence to permit the Court to grant a directed verdict in its favor on the issue.   Defendants are not entitled to partial summary judgment establishing that the City is allowing traditional travel agents operating under a similar business model to pay taxes on an amount less than the "gross amount" paid by guests.

IV.   CONCLUSION

For the foregoing reasons:

1.   Plaintiff Mayor and City Council of Baltimore's Motion for Partial Summary Judgment [Document 107] is GRANTED IN PART.

2.   The "Non-OTC" Defendants' Motion for Summary Judgment [Document 115] is GRANTED.

3.   Defendants' Motion for Summary Judgment [Document 117] is GRANTED IN PART.

4.   Plaintiff shall arrange a telephone conference to held by August 16, 2012, to discuss the scheduling of further proceedings herein.

SO ORDERED, this <u>Monday, July 23, 2012</u>.

<u>      /s/       </u>
Marvin J. Garbis
United States District Judge

29